**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE COLLEGE OF NEW JERSEY *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 22-3283 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants The College of New Jersey ("TCNJ") and Kathryn Foster's ("Foster," and collectively with TCNJ, "Defendants") Motion to Dismiss Plaintiff John Doe's ("Plaintiff") Complaint (ECF No. 1). (ECF No. 12.) Plaintiff opposed (ECF No. 15), and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court denies Defendants' Motion to Dismiss.

**I.    BACKGROUND**[1]

This case concerns Defendants' handling of sexual assault allegations that Jane Roe ("Roe") brought against Plaintiff. The Court summarizes those allegations below.

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### A.   The Incident Between Plaintiff and Roe.

Plaintiff was a freshman at TCNJ in 2017. (Compl. ¶ 46, ECF No. 1.) Throughout his freshman year, Plaintiff shared a dorm room with Witness 3, his roommate. (*Id.* ¶ 47.) On occasion, Roe would visit Plaintiff's dorm room to spend time with Witness 3, Roe's friend and ex-boyfriend from high school. (*Id.* ¶ 48.) Plaintiff and Roe did not interact outside of Roe visiting Witness 3 in the dorm room. (*Id.* ¶ 49.)

On or around September 30, 2017, Plaintiff, Witness 3, and Roe were spending time in Plaintiff's dorm room. (*Id.* ¶ 50.) At some point, Witness 3 left the dorm room for the night, leaving Plaintiff and Roe alone. (*Id.* ¶ 51.) After talking, Plaintiff and Roe began "consensual kissing that lasted for a few minutes." (*Id.* ¶¶ 54-55.) "Plaintiff then asked Roe if she would give Plaintiff oral sex, and Roe said yes." (*Id.* ¶ 56.) At this point, "Roe voluntarily and willingly gave Plaintiff oral sex." (*Id.* ¶ 57.) Afterwards, Roe chose to sleep in Plaintiff's bed. (*Id.* ¶ 58.)

The following morning, Plaintiff asked Roe if she wanted to have sexual intercourse. (*Id.* ¶¶ 59-60.) Roe said yes, and the two engaged in "consensual sexual intercourse." (*Id.*) Shortly thereafter, Roe left Plaintiff's dorm room. (*Id.* ¶ 63.) After this encounter, Plaintiff describes subsequent interactions with Roe as "friendly," "speaking to each other when they saw one another on campus," and working on calculus assignments together. (*Id.* ¶¶ 64-65.) At no point did Roe indicate to Plaintiff that "she was uncomfortable being around Plaintiff and never brought up an alleged nonconsensual encounter to Plaintiff." (*Id.* ¶ 66.)

### B.   Jane Roe's Complaint and Defendants' Investigation.

About one month after the sexual encounter, Roe began dating Witness 1. (*Id.* ¶ 67.) Plaintiff alleges that "Roe regretted her sexual encounter with Plaintiff," fearing that Witness 1 would discover that Roe had previously engaged in sexual intercourse with Plaintiff, and "so she

2

alleged that the encounter was nonconsensual." (*Id.* ¶ 68.) At some point thereafter, Roe told Witness 1 and her friend Witness 2 that the sexual encounter with Plaintiff was nonconsensual. (*See id.* ¶¶ 68, 70.) On September 6, 2018, Roe and Witness 2 reported the incident to TCNJ's Title IX Coordinator, Dr. Chelsea Jacoby. (*Id.* ¶ 71.) Despite TCNJ's awareness of Roe's complaint, no one ever notified Plaintiff of the complaint filed against him. (*Id.* ¶¶ 74-75.) On September 27, 2018, Roe informed TCNJ that she wanted to close the case. (*Id.* ¶ 76.)

On April 23, 2021, three years later, Roe contacted the Title IX office to reopen her case. (*Id.* ¶¶ 77-78.) On May 4, 2021, Roe filed a formal complaint, and Plaintiff was notified three days later. (*Id.* ¶¶ 81-82.) The Notice of Allegations (the "Notice") "stated that Plaintiff was alleged to have engaged in nonconsensual sexual intercourse with Roe around late September/early October of 2017 and that Plaintiff allegedly made sexually harassing comments to Roe during their calculus class in the spring of 2018." (*Id.* ¶ 84.) In addition, the Notice stated that an Alternative Resolution Agreement ("ARA") was being sought in the matter without detailing the implications of participating in the resolution process. (*Id.* ¶¶ 87-88.) Upon receipt of the Notice and the ARA, Plaintiff retained legal representation. (*Id.* ¶ 91.) On May 14, 2021, the Title IX Coordinator presented the ARA to Plaintiff, which included 90 hours of community service and the requirement that he attend online classes. (*Id.* ¶¶ 92-93.) Ultimately, Plaintiff declined to participate in the Alternative Resolution Process as he felt that it was an "unreasonable punishment for something that he did not do." (*Id.* ¶ 94.)

On May 19, 2021, Roe indicated to the Title IX Coordinator that she wanted to pursue the formal resolution process as Plaintiff did not agree with her proposed ARA. (*Id.* ¶ 95.) On May 21, 2021, TCNJ opened a formal investigation and resolution process, at which point Plaintiff had already graduated from TCNJ. (*See id.* ¶¶ 96-99.) Plaintiff's legal counsel at the time advised him

to remain silent throughout the grievance process to avoid any criminal implications that could be used against him in a criminal prosecution. (*Id.* ¶ 100.) As a result, Plaintiff declined to meet with investigator, Caitlin Babcock, or co-investigator, Melissa Andreas, to discuss the allegations. (*See id.* ¶ 101.) Roe, Witness 1, and Witness 2 did, however, give statements to the investigator that Plaintiff alleges were inconsistent and raised credibility issues. (*See id.* ¶¶ 102-04.) The Preliminary Investigation Report released on or around July 27, 2021, failed to note any inconsistent statements and included "prejudicial hearsay statements" for the Hearing Administrator to consider. (*See id.* ¶¶ 109-12.) While TCNJ allowed Roe to submit hearsay statements from her therapist regarding her mental state, Plaintiff was not allowed to rebut Roe's statements and present evidence to the same. (*See id.* ¶¶ 111, 117-19.)

      **C.**      **TCNJ's Policies for Addressing Sexual Assault.**

Upon Plaintiff's matriculation to TCNJ, Plaintiff and TCNJ were mutually bound by TCNJ's Interim Sexual Harassment, Misconduct, and Discrimination Policy (the "Policy"), which governs TCNJ's investigations and disciplinary proceedings regarding sexual misconduct procedures. (*Id.* ¶ 136.) In response to external pressures on TCNJ, Plaintiff alleges that TCNJ applied the Policy more harshly on male students accused of sexual misconduct compared to female students. (*Id.* ¶ 139.)

The Policy states that once a formal complaint is signed, a Respondent is to be informed, in writing, of:

> [T]he identities of the parties (if known); the date and location of the alleged incident (if known); potential Policy violations; that a determination of responsibility will be made only at the conclusion of a hearing (if a hearing is applicable); and that the Respondent is presumed not responsible for the alleged Prohibited Conduct prior to the determination.

4

(*Id.* ¶ 142.) In addition, "[t]he burden of proof (preponderance of the evidence), and the burden of gathering evidence sufficient to reach a determination regarding responsibility rest on [TCNJ] and not on the individual parties." (*Id.* ¶ 144.) Plaintiff alleges that TCNJ breached its Policy by failing to provide proper notice to Plaintiff of the allegations against him and improperly placing the burden of proof on Plaintiff to disprove Roe's allegations. (*See id.* ¶¶ 143, 145.)

According to the Policy,

> The Formal Grievance process will be concluded within a reasonably prompt manner, and [TCNJ] will make every effort to not exceed ninety (90) business days after the filing of the Formal Complaint, provided that the process may be extended for a good reason, including but not limited to the absence of a party, a party's Advisor, or a witness; concurrent law enforcement activity; or the need for language assistance or accommodation of disabilities. Should the Reporter or Respondent need a reasonable extension, without undue delay, a written request must be submitted to the Investigator(s) for consideration.

(*Id.* ¶ 148.) Additionally, the Policy allows TCNJ to dismiss a formal Complaint if "the Respondent is no longer enrolled or employed by the College." (*Id.* ¶ 151.) Here, Plaintiff alleges that TCNJ breached its Policy by exceeding the 90 business days without cause and failing to dismiss Roe's complaint since Plaintiff had already graduated. (*See id.* ¶¶ 149, 152.)

D.     **The Disciplinary Hearing and Plaintiff's Suspension.**

On October 15, 2021, TCNJ held a hearing on Roe's complaint. (*Id.* ¶ 121.) Upon advice of legal counsel, Plaintiff did not appear at the hearing. (*Id.* ¶¶ 122–23.) On November 5, 2021, Plaintiff received an e-mail message notifying him that he had been found responsible for sexual assault and sexual harassment. (*Id.* ¶ 124.) As a result, Plaintiff was sanctioned to a two-year suspension, which appears on his school transcript. (*Id.* ¶¶ 125, 154.)

Plaintiff obtained new legal representation to appeal the decision and requested in his appeal that TCNJ reopen the case to allow Plaintiff a new hearing with the opportunity to be heard.

(*Id.* ¶¶ 132-33.) On December 2, 2021, however, TCNJ denied Plaintiff's appeal on all grounds. (*Id.* ¶ 134.)

On May 31, 2021, Plaintiff filed his Complaint. In lieu of an answer, Defendants now move to dismiss Plaintiff's Complaint.

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

555). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.  DISCUSSION

This case involves the manner in which TCNJ, a federally-funded college, conducted its investigation and disciplinary proceedings into a sexual misconduct complaint filed against Plaintiff. In the Complaint, Plaintiff alleges two causes of action: (1) violation of Fourteenth Amendment Due Process against Foster; and (2) violation of Title IX of the Education Amendments of 1972 against TCNJ. (*See* Compl. 22, 25.) Defendants move to dismiss both counts, alleging that the first cause of action against Foster is barred by Eleventh Amendment sovereign immunity, and that the second cause of action should be dismissed for failure to state a claim under Title IX. (*See* Defs.' Moving Br. 11, 15, ECF No. 12-1.) The Court addresses each claim below.

### A.     Plaintiff's Claim Against Foster is Not Barred by Eleventh Amendment Sovereign Immunity.

Defendants argue that Plaintiff's claim against Foster is barred by Eleventh Amendment sovereign immunity. (*Id.* at 11.) Plaintiff disagrees, contending that Foster is not entitled to sovereign immunity because the Eleventh Amendment permits suits against state officers for prospective injunctive relief. (Pl.'s Opp'n Br. 18, ECF No. 15.) The Court, first, determines whether Plaintiff sued Foster in her individual or official capacity. The Court, then, evaluates whether the relief Plaintiff seeks is permitted.

First, "[t]o determine whether a plaintiff sued a defendant in his personal capacity, official capacity, or both[,] we look to the complaint and . . . the proceedings." *Atwell v. Schweiker*, 274 F. App'x 116, 118 (3d Cir. 2007) (citation omitted). For individual capacity liability, a plaintiff must prove that the official was personally involved in the deprivation of a federally-protected

7

right and that the official's conduct caused the deprivation. *Walker v. Beard*, 244 F. App'x 439, 441 (3d Cir. 2007) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). If it is clear, however "that the substance of the allegations is against the defendant for actions taken in his official capacity," then a determination that a state official was sued in his official capacity is appropriate. *Moyer v. Aramark*, No. 18-2267, 2019 WL 1098951, at *5 (E.D. Pa. Mar. 7, 2019) (citing *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 270 (1997)).

The Court finds that Plaintiff sued Foster in her official capacity. Here, Plaintiff alleged that, at all relevant times, Foster was the President of TCNJ. (Compl. ¶ 16.) As the President, Foster was responsible for overseeing TCNJ's Title IX Office and for implementing the policies that govern TCNJ's investigations and disciplinary proceedings. (*Id.*) Plaintiff contends that Foster was scrutinized by TCNJ students for the way she handled sexual assault complaints at her previous university. (*Id.* ¶ 43.) In particular, TCNJ students discovered that Foster intervened to overturn the suspension of a male student accused of sexual assault and denied a female student's claims on appeal. (*Id.* ¶¶ 43-44.) As a result, Plaintiff alleged that "the student pressure placed on TCNJ as a result of Foster's past actions has prompted TCNJ to take a hard stance against males accused of sexual assault, and to decline to properly review allegations made by female students on appeal for fear of further student backlash." (*Id.* ¶ 45.) Since Plaintiff has not alleged any facts against Foster in her personal capacity, the Court, accordingly, finds that Plaintiff only sued Foster in her official capacity.

Having determined that Plaintiff makes claims against Foster in her official capacity, the Court now turns to whether the claims are barred by the Eleventh Amendment. Plaintiff alleges that Foster is the TCNJ official charged with conferring degrees to TCNJ students and for ensuring that student education records, including transcripts, are disclosed to third-party requesters.

(Compl. ¶¶ 161-62.) Plaintiff seeks to expunge his disciplinary record, to remove the suspension from his student education records, and to destroy all records pertaining to Roe's complaint against him. (*Id.* ¶ 183.) The Court must determine whether this relief is prospective injunctive relief. *Williams ex rel. Bookbinder v. Connolly*, 734 F. App'x 813, 816 (3d Cir. 2018) (holding that the Eleventh Amendment does not bar "a private plaintiff [from suing] state officials for prospective injunctive relief to end ongoing violations of federal law." (citation omitted)).

While the Third Circuit has not directly considered whether state officials of a college declining to reevaluate a disciplinary record of a former student qualifies as prospective injunctive relief, other circuits have squarely considered the issue. At least four other circuits have held that revising disciplinary records is prospective injunctive relief and is not barred by the Eleventh Amendment. *See Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) ("Because Doe I and Doe II are seeking prospective equitable relief, their claims are not barred by the Eleventh Amendment. . . . If successful, . . . the individual defendants would merely be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process."); *see also Doe v. Purdue Univ.*, 928 F.3d 652, 666-67 (7th Cir. 2019) (holding that a student found guilty of sexual assault through procedures allegedly violating due process could sue for an "injunction ordering university officials to expunge the finding of guilt from his disciplinary record"); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (finding that negative entries in a student's university records presented a continuing violation sufficient to overcome Eleventh Amendment immunity); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (finding that a request to expunge a grade from a student's record is not barred by the Eleventh Amendment). These Circuits reason that the relief sought in the disciplinary context is not limited merely to past violations; rather, the injunctions serve the purpose of preventing

present and future harm to the plaintiff. *See Flint*, 488 F.3d at 825; *see also Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999) ("*Ex Parte Young* provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities.").

The Court agrees with these circuits and finds that Plaintiff's claim against Defendant Foster is not barred by the Eleventh Amendment. The Court, accordingly, denies the motion to dismiss this claim.

B.   **Plaintiff Sufficiently Alleges a Title IX Claim Against TCNJ.**

TCNJ argues that the Court should dismiss Plaintiff's Title IX claim because Plaintiff failed to adequately allege a causal connection between TCNJ's actions during Plaintiff's Title IX proceedings and gender bias. (Defs.' Moving Br. 21.) Plaintiff contends that he has, in fact, sufficiently alleged facts that raise a plausible inference of gender bias. (Pl.'s Opp'n Br. 6.) The Court agrees with Plaintiff.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Because Title IX prohibits subjecting a person to discrimination on account of sex, it is understood to bar the imposition of university discipline [where gender] is a motivating factor in the decision to discipline." *Doe v. Univ. of Scis.*, 961 F.3d 203, 209 (3d Cir. 2020) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016)). Here, it is undisputed that TCNJ receives federal funds and, therefore, may be held liable under Title IX. The success of Plaintiff's claim, thus, depends on whether TCNJ discriminated against him "on the basis of sex." 20 U.S.C. § 1681(a).

10

As an initial matter, the parties seem to disagree on the appropriate standard the Court should apply. Both parties direct the Court to the Third Circuit's decision *University of Sciences*. (Defs.' Moving Br. 15; Pl.'s Opp'n Br. 6.) Before assessing Plaintiff's Title IX claim in *University of Sciences*, the Third Circuit cited to various Title IX doctrinal frameworks adopted by other circuits, including erroneous outcome, selective enforcement, deliberate indifference, and archaic assumptions. *Univ. of Scis.*, 961 F.3d at 209. The Third Circuit noted that these frameworks all address the same issue: whether sex was a motivating factor in a school's decision to discipline a student. *Id.* As such, the Third Circuit held that "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." *Id.*; *see also Purdue Univ.*, 928 F.3d at 667. While the parties remain free to frame their claims as they so choose, "this standard hews most closely to the text of Title IX." *Univ. of Scis.*, 961 F.3d at 209.

This plausible inference standard can be satisfied in several ways, but here, Plaintiff's allegations fit into two categories: (1) procedural flaws in TCNJ's investigation and enforcement; and (2) external pressure against Foster and TCNJ regarding how they handle sexual misconduct claims against males. (*See* Compl. ¶¶ 192-93.) TCNJ argues that the only procedural flaw in the investigation arises from Plaintiff's decision to remain silent throughout the investigation and disciplinary proceedings. (Defs.' Moving Br. 23.) As a result, TCNJ contends that Plaintiff's Title IX claim should be dismissed for failure to make a causal connection between the flawed proceedings and gender bias. (*Id.* at 21.)

The Court first considers Plaintiff's allegations of procedural flaws in the investigation and enforcement process. A plaintiff may cast articulable doubt on the outcome of a sexual misconduct proceeding in various ways, including: procedural flaws in the investigatory and adjudicative

11

process; noting errors or inconsistencies in the adjudicator's oral or written findings; or challenging the overall adequacy and reliability of the evidence. *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018); *see also Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). In this case, Plaintiff articulated sufficient flaws to support a plausible inference of discrimination. (Compl. ¶ 192.) Plaintiff's allegations include: (1) TCNJ failed to provide Plaintiff with proper notice of the allegations against him and did not notify Plaintiff of Roe's initial complaint until three years later; (2) TCNJ failed to ask Roe any questions that would challenge her credibility, including questions regarding her evidence and motives; (3) TCNJ failed to question Roe about her inconsistent statements throughout the investigation; (4) TCNJ failed to take statements of innocence from Plaintiff's advisor into account in rendering a decision; (5) TCNJ failed to properly apply the preponderance of the evidence standard, and instead made a decision that went against the weight of evidence; (6) TCNJ refused to afford Plaintiff an opportunity to be heard once Plaintiff obtained an appropriate advisor, despite Plaintiff's requests in his appeal, before the sanction became final; and (7) TCNJ failed to consider that Roe did not bring forth a complaint until after she began dating her then-current boyfriend whom, on information and belief, she did not want to find out about her encounter with Plaintiff. (*See* Compl. ¶¶ 68, 192.) Therefore, Plaintiff alleges sufficient procedural flaws to raise a plausible inference of discrimination on the basis of sex. *See Doe v. Case W. Reserve Univ.*, No. 17-414, 2017 WL 3840418, at *6-7 (N.D. Ohio Sept. 1, 2017) (accepting complainant's allegations at face value, without investigating inconsistent statements and contradictory evidence, supported allegation of gender bias); *see also Marymount Univ.*, 297 F. Supp. 3d at 586-87 (finding adjudicator's failure to consider evidence that refuted complainant's allegations and crediting of complainant's implausible allegations supported allegation of gender bias).

The Court next considers Plaintiff's allegations of external pressures against Foster and TCNJ. Courts have routinely found a plausible inference of gender bias where the plaintiff alleges "patterns of decision making," a "history [of] gender bias," or pressure on the defendant to "demonstrate it would respond better to sexual assault allegations . . . against males." *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 466225, at *11-12 (D.N.J. Jan. 17, 2018). In the Complaint, Plaintiff alleges that "TCNJ has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against non-male students." (Compl. ¶ 195.) In addition, Plaintiff alleges that TCNJ was motivated by both external and internal pressure, as well as financial interests, to find male students responsible to "overcorrect" a history of failing to adequately respond to sexual misconduct allegations against males. (*Id.* ¶¶ 193-94.) More specifically, Plaintiff alleges that Foster has come under fire multiple times for her failure to sufficiently respond to allegations of sexual misconduct made against males. (*Id.* ¶¶ 38-45.) These external pressures, coupled with the procedural flaws noted above, are sufficient to state a Title IX claim. *See Purdue Univ.*, 928 F.3d at 669-70 (holding that where the plaintiff alleged external pressure on the school to aggressively pursue claims of sexual misconduct against men, coupled with procedural flaws and unsupported, biased decision-making in his disciplinary process, those allegations collectively sufficed to state a Title IX claim for relief); *see also Univ. of Scis.*, 961 F.3d at 209 (finding that the plaintiff's complaint contained plausible allegations supporting a Title IX claim where the plaintiff alleged that, "USciences yielded to external pressure when implementing and enforcing the Policy," and "that sex was a motivating factor in UScience's investigation and decision to impose discipline").

Even though TCNJ sets forth alternative explanations for why it treated the alleged violations differently, on Defendants' Motion to Dismiss, the Court must construe all factual allegations in the light most favorable to Plaintiff. *See Doe v. Princeton Univ.*, No. 19-7853, 2023 WL 1778832, at *7 (D.N.J. Feb. 6, 2023) ("[D]rawing all reasonable inferences in the light most favorable to Doe, as [the Court] must at this stage, it is plausible that sex was a motivating factor in Princeton's investigation and disciplinary decision of Doe."); *see also Univ. of Scis.*, 928 F.3d at 210 ("Drawing all reasonable inferences in the light most favorable to Doe, as we must at this stage, it is plausible that, as he alleges, sex was a motivating factor in UScience's investigation and decision to expel him."). The Court, thus, finds that Plaintiff has raised a plausible inference that gender bias was a motivating factor in TCNJ's investigation and disciplinary proceedings, which casts articulable doubt upon TCNJ's decision to sanction him. Since a plausible inference is all that is required at this stage, the Court denies TCNJ's Motion to Dismiss.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss. The Court will enter an order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**